Ramón Suárez Sánchez, peticionario, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, Hon. Baldomero Freyre, Juez, demandado.

*Número:* C-64-38      *Resuelto:* 10 de junio de 1965

508

Santos P. Amadeo, Rubén Rivera Ramos y Víctor Velasco Gordils, abogados del peticionario; J. B. Fernández Badillo, Procurador General, y J. F. Rodríguez Rivera, Procurador General Auxiliar, abogados del demandado.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

A las 12:30 de la noche del 23 al 24 de febrero de 1963, en la Urbanización Pública San José de Hato Rey y en

ocasión de un baile de bodas, surgió una riña entre los jóvenes Felipe Cabán Jiménez, José Juan Calderón, Ramón Suárez Sánchez e Israel Ruiz Nieves. Resultó este último muerto a consecuencia de las heridas que allí se le infirieron.

El 11 de abril siguiente, ante la Sala de San Juan del Tribunal Superior, fueron conjuntamente acusados de asesinato en primer grado Felipe Cabán Jiménez y José J. Calderón Velázquez, ambos mayores de edad. Entre los testigos de El Pueblo nombrados al dorso de la acusación figuraba Ramón Suárez Sánchez, menor de edad.

El 21 de mayo de 1963, el fiscal presentó ante la Sala de Menores de San Juan del Tribunal Superior, dos querellas en interés del menor Ramón Suárez Sánchez, por asesinato en primer grado la primera y por portación de armas prohibidas la segunda.

En aquélla se alegó que ". . . el referido menor Ramón Suárez Sánchez, el día 24 de febrero de 1963, hora 12:30 de la madrugada . . . ilegal, voluntaria y maliciosamente, y actuando en común acuerdo con los adultos: Felipe Cabán Jiménez y José Juan Calderón Velázquez, con malicia premeditada, deliberación, con intención decidida y firme de matar, acometió y agredió con una cuchilla de resorte, con hoja de metal de aproximadamente cuatro pulgadas de largo, al ser humano Israel Ruiz Nieves, infiriéndole varias heridas, una en la región torso lumbar izquierdo y dos en el abdomen, de cuyas heridas y golpes falleció en el acto."

La portación de armas prohibidas imputada se fundó en la conducción y portación, sobre su persona, de la cuchilla mencionada en la primera acusación, alegándose que la portaba con fines de ofensa y defensa y no como instrumento de arte, deporte, profesión, ocupación y oficio.

En 11 de junio y 6 de agosto de 1963 fueron celebradas vistas ante la Sala de Menores para determinar si de conformidad con el Art. 4 de la Ley Núm. 97 de 1955 y la Regla 13 de las de procedimiento para los asuntos cubiertos por ese

estatuto, procedía darse traslado de los casos para que se tramitaran por el procedimiento ordinario criminal y como si se tratara de un adulto. Entonces el menor estuvo acompañado de sus padres "y representado por su abogado . . . ."

El 22 de ese mes de agosto dictó resolución la Sala de Menores renunciando su jurisdicción para entender en los asuntos relacionados en las querellas y dando traslado de los casos "a la Sala competente del Tribunal Superior . . . ." (1)

---

(1) En parte, dice así esa resolución:

"Los fundamentos habidos para que el Tribunal llegara a la conclusión arriba mencionada son los siguientes:

1. Ramón Suárez Sánchez nació en Río Piedras el día 24 de febrero de 1945. Los hechos que se le imputan en las querellas J. 63-479 y J. 63-480 ocurrieron el día 24 de febrero de 1963, es decir que el mencionado Ramón Suárez Sánchez a la fecha en que se alega que cometió las faltas tenía 17 años once meses de edad.

2. Que la falta que se le imputa en la querella J. 63-480, Asesinato en Primer Grado, constituía delito grave si en ella incurriera un adulto.

3. Que en el expediente del querellado en este caso aparece la siguiente información:

Evaluación Psicológica: Cociente de Inteligencia: 62, inteligencia limitada. Cae en la categoría de deficiencia mental leve. En los resultados del examen no hay señales de organicidad.

No tiene gran imaginación y por esto no puede anticipar la consecuencia de sus actos. Internamente es un rebelde y cuando se siente sobrecogido por la tensión o la ansiedad la tendencia automática es a intensificar la actividad motora sea cual sea. Disposición agresiva a la cual puede dar expresión en determinadas circunstancias. Psicólogo, P. A. Sifre Franco, M.A.

Evaluación Psiquiátrica: Está en contacto con la realidad y bien orientado. No hay evidencia de desorden mental en este joven. Se da cuenta de la naturaleza de la acusación. Psiquiatra, Arturo Flores Gallardo, M.D.

El querellado tiene historial de otras agresiones. En el ambiente en que se ha desenvuelto el menor abunda el vicio, incluyendo tráfico de drogas. Mientras trabajaba con su padre en la Plaza del Mercado de Río Piedras se reunía con maleantes adultos. El hogar no ofrece los necesarios controles. Sus padres, después de 24 años de unidos, se separaron hace cuatro años. La madre es alcohólica. El padre se unió a otra mujer, y no ofrece al menor la atención ni los controles debidos.

Por todo lo arriba expuesto el Tribunal en el uso de su discreción, por la presente renuncia la jurisdicción para entender en los asuntos relacionados en la querella J. 63-480, por hechos de Asesinato en Primer Grado, y ordena que se dé traslado al mencionado caso a la Sala competente del Tribunal Superior para que el Fiscal de Distrito proceda inmediatamente

Durante los días 26 y 27 de agosto de 1963 fue celebrado el juicio contra Felipe Cabán Jiménez en los casos de asesinato y portación ilegal de armas. ([2])

Durante el primer día de juicio ante jurado declaró como testigo de cargo el peticionario Ramón Suárez Sánchez. En síntesis, su declaración a preguntas del fiscal, fue como sigue:

Conocía a Felipe Cabán Jiménez y al otro acusado José Juan Calderón Velázquez; en la noche del 24 de febrero de 1963 estuvo en las bodas de una joven llamada Milagros celebrada en la Urbanización Pública San José de Hato Rey; después de la boda se celebró un baile; en esa noche conoció a Israel Ruiz Nieves; éste estaba bailando allí y tuvo una discusión con un tal Chuíto que alegaba que Israel le había quitado su pareja de baile; allí estaban también José Juan Calderón y Felipe Cabán Jiménez; se dijo en el baile que a un tal Quirín, hermano de Cabán, lo habían cortado y entonces le dieron a Cabán una cuchilla larga; Cabán "puyó por el pecho con la cuchilla a Israel Ruiz Nieves" en los momentos en que éste había caído al piso; Israel le había dado—a Ramón Suárez Sánchez—un macanazo y entonces José Calderón "y un montón se le fueron detrás"; cuando Israel fue a brincar una verja lo cogieron; el que le dio la puñalada por el pecho había sido Felipe Cabán Jiménez; él, Ramón Suárez Sánchez, trabajaba con su padre en la Plaza del Mercado de Río Piedras.

a practicar la investigación de rigor y se someta a un magistrado para determinación de causa probable y fijación de fianza.

Habiéndose renunciado a la jurisdicción para entender en los asuntos alegados en la querella J. 63-480, para que se proceda contra Ramón Suárez Sánchez, como si fuera un adulto, se dá por tanto, traslado a la jurisdicción ordinaria a la querella por portación de armas, que lleva el número de radicación J. 63-479, para que se tome la acción que corresponde."

([2]) Al otro acusado José Juan Calderón Velázquez se le había concedido juicio por separado. Se le celebró el 4 de diciembre de 1963. En ese día, a petición del fiscal, se rebajó la calificación de asesinato en primer grado a homicidio voluntario "porque sólo podía probar que Calderón agredió al occiso con los puños y con un palo." Entonces se declaró culpable Calderón y le fue impuesta una pena de 2 a 6 años de presidio.

A preguntas del abogado defensor declaró, en lo pertinente: Del sitio del baile habían bajado como unas doce personas; uno llamado Quirín, hermano de Felipe Cabán había sido cortado abajo; nunca había visto a Israel, la víctima, cortar a Quirín, a quien le habían dado dos tajos por la espalda; él no portaba en su persona cuchilla o navaja alguna en esa noche; él sólo usa una cuchilla en la Plaza del Mercado de Río Piedras, donde trabaja, para cortar los sacos de viandas; había oído decir que la víctima había recibido tres tajos; después de los hechos fue al hospital porque tenía un macanazo que le había dado Israel por el cráneo; cuando salió del hospital ya eran como las cinco de la mañana y a esa hora se fue para la Plaza del Mercado a trabajar en el puesto de su padre.

El 27 de agosto de 1963 el jurado declaró culpable del delito de asesinato en primer grado a Felipe Cabán Jiménez. Se le impuso la pena de reclusión perpetua. Respecto a la infracción al Art. 4 de la Ley de Armas, el tribunal lo absolvió por insuficiencia de prueba.

El 7 de noviembre de 1963 el fiscal presentó acusación contra el peticionario Ramón Suárez Sánchez por un delito de asesinato en primer grado cometido, según reza esa acusación, de la manera siguiente:

"El referido acusado Ramón Suárez Sánchez allá en o para el día 24 de febrero de 1963 y en Hato Rey, P.R. que forma parte del Tribunal Superior de Puerto Rico, Sala de San Juan, ilegal, voluntaria, maliciosa y criminalmente, actuando en concierto y de común acuerdo con José J. Calderón Velázquez y Felipe Cabán Jiménez c/p Pipe, con premeditación, deliberación y propósito decidido y firme de matar, demostrando tener un corazón pervertido y maligno, acometió y agredió alevosa y criminalmente con una cuchilla que es un arma cortante, al ser humano Israel Ruiz Nieves, produciéndole heridas de carácter grave que le produjeron la muerte allí y entonces."

Contra la acusación formuló Ramón Suárez Sánchez, por medio de letrado, una moción para desestimar fundada

en que (1) desde su arresto y hasta la fecha de presentación de la acusación habían transcurrido más de 120 días y (2) se le había concedido "inmunidad por el Pueblo de Puerto Rico contra todo proceso por su participación en los hechos objeto de la acusación de epígrafe, según lo dispuesto en la Ley sobre Inmunidad a Testigos (Ley 13 de 1941)." Posteriormente presentó una moción solicitando archivo de las causas—el fiscal había presentado también en su contra una acusación por infracción a la Ley de Armas—"por el fundamento de que él no estuvo asistido de abogado, cuando sin haber renunciado expresa e inteligentemente el derecho a no incriminarse y sin estar asistido por abogado y sin habérsele advertido de dicho derecho el acusado declaró como testigo del pueblo en el caso de Pueblo de Puerto Rico v. Felipe Cabán Jiménez . . . sobre asesinato en primer grado e infracción a la ley de armas, a pesar de que el peticionario estaba acusado del delito por el cual se procesaba a Felipe Cabán Jiménez y de este hecho tenía conocimiento personal el fiscal que acusó y procesó a dicho acusado."

Discutidas ambas mociones el 30 de abril de 1964, el Tribunal Superior las declaró sin lugar, entendiendo "que el artículo 239 del Código de Enjuiciamiento Criminal no tiene ámbitos dentro de las circunstancias de este caso." [3]

En este recurso de *certiorari* para revisar esa resolución del Tribunal Superior, el peticionario señala la comisión de los siguientes errores:

### "Primer Error

"Porque habiendo sido acusado el peticionario conjuntamente con Felipe Cabán Jiménez y José J. Calderón Velázquez de Asesinato en Primer Grado, y habiendo el peticionario declarado como testigo de El Pueblo en el caso seguido contra uno de sus co-acusados, y no habiendo el peticionario renunciado expresa e

---

[3] El tribunal recurrido, sin duda alguna, se quiso referir a la Regla 247 (c) de Procedimiento Criminal en vigor al presentarse la acusación, que sustituyó a los Arts. 239, 240 y 241 del antiguo Código de Enjuiciamiento Criminal.

inteligentemente el derecho a no incriminarse, como se incriminó al declarar en contra de Felipe Cabán Jiménez, y sin haber tenido el peticionario, ni haber renunciado éste expresa e inteligentemente el derecho a estar asistido de abogado, ya que el juez al declarar el peticionario, no le advirtió del derecho a no incriminarse y del derecho a tener asistencia de abogado, constituye una violación del debido proceso de ley (Enmiendas V, VI y XIV de la Constitución Federal) el someter a juicio al peticionario.

### *"Segundo Error*

"Porque al peticionario se le privó del derecho a no incriminarse y del derecho a asistencia de abogado al no advertirle el juez sentenciador que él tenía derecho a no declarar como testigo y el derecho a tener asistencia de abogado antes de declarar, violándose así las Enmiendas V, VI, y XIV de la Constitución de los Estados Unidos.

### *"Tercer Error*

"Porque de no concedérsele inmunidad al peticionario de acuerdo con los términos de la Ley Núm. 3 de 18 de marzo de 1954, la misma sería nula e inconstitucional (Enmiendas V, VI y XIV de la Constitución Federal), ya que el Pueblo obtuvo el testimonio del peticionario para conseguir la condena de un co-acusado y el juez, sin advertirle del derecho que tenía a no incriminarse y a tener asistencia de abogado, el peticionario declaró como testigo de El Pueblo incriminándose, y ahora se le niega la inmunidad a que tenía derecho de haberse negado a declarar y de haber tenido asistencia de abogado.

### *"Cuarto Error*

"Porque habiendo sido excluido el peticionario del proceso incoado contra él y sus co-acusados, para servir como testigo de cargo, dicha exclusión equivale a una absolución de acuerdo con los términos del Artículo 241 del Código de Procedimiento Criminal."

Los tres primeros señalamientos realmente plantean una sola cuestión, a saber: si al peticionario, a la luz de las circunstancias concurrentes, se le privó del derecho a no incriminarse y también del derecho a asistencia de abogado al

no advertirle el juez sentenciador, al disponerse él a declarar en juicio contra Felipe Cabán Jiménez, que tenía derecho a no declarar como testigo y a asistencia de abogado antes de declarar.

■ Una moción para desestimar la acusación o la denuncia o cualquier cargo de las mismas, conforme a la Regla 64 de Procedimiento Criminal, "sólo podrá basarse en uno o más" de los varios fundamentos que la propia Regla 64 enumera. Entre tales fundamentos no está comprendida la situación de hechos en que se predican o descansan esos tres señalamientos.

■ El proceso criminal iniciado contra el peticionario se encuentra aún en la etapa de las alegaciones de derecho. Todavía, en sus méritos, no existe en el récord alegación de culpable o no culpable bajo la Regla 68. En este estado se hace difícil asegurar si El Pueblo utilizará en juicio como evidencia adversa al peticionario la declaración que prestó el 26 de agosto de 1963 en el caso contra Felipe Cabán Jiménez.

■ Consideramos acertada la siguiente argumentación que respecto a los dos primeros errores hace el Procurador General Auxiliar Rodríguez Rivera en su alegato:

"Los planteamientos hechos en estos dos señalamientos de errores no constituyen un ataque válido contra la resolución recurrida. Se trata realmente de una anticipación del peticionario sobre la vulnerabilidad a que entiende habrá de estar abocada la evidencia a ser ofrecida por el Ministerio Público en la vista en su fondo de las acusaciones. Como bien sostuvo este Hon. Tribunal en el caso de *Batalla* v. *Tribunal de Distrito*, 74 D.P.R. 289 (1953), la cláusula sobre inmunidad ofrece protección contra el éxito de una acusación, *disponible al acusado como defensa, y no inmunidad contra la acusación en sí*. Entendemos que aun en aquella situación más favorable al peticionario, éste tendría que ser juzgado por las acusaciones que le fueron formuladas, y solo entonces, como parte de su defensa en el proceso podría invocar la alegada inmunidad, la cual se confiere en la extensión en que

la constitución establece el privilegio, ya que, de ninguna manera podría constituir inmunidad contra las acusaciones en sí. La existencia de un privilegio para un acusado se dilucida siempre dentro del procedimiento a que se somete una acusación ya que ninguna persona puede gozar de inmunidad respecto a una acusación que bajo la ley pudiera iniciar en su contra el Estado. *State* v. *Nowell*, 58 NH 314. Nada podría privar al Estado de enjuiciar al peticionario a base de evidencia competente fuera de cualquier derecho o privilegio de que éste pudiera estar investido a base de las incidencias y circunstancias derivadas del procesamiento a que fueran sometidos los presuntos copartícipes de los hechos que dieron lugar a la acusación contra el peticionario.

"Tratándose meramente de la iniciación de un proceso criminal mediante ciertas acusaciones contra el peticionario, y no de la admisión en evidencia en su contra de prueba inadmisible, no vemos como pueda ser aplicable la jurisprudencia citada en el alegato del peticionario. No pretendemos, sin embargo, emitir juicio sobre la corrección de los planteamientos suscitados por éste. Entendemos que el lugar de los mismos corresponde al juicio ordinario a que debe ser sometido. Alega el peticionario, una serie de ocurrencias respecto a varias declaraciones dadas por él al fiscal en la investigación de los hechos, y luego en el proceso contra Felipe Cabán Jiménez. La veracidad de todos estos hechos va como ataque a la competencia de la prueba presumiblemente en manos del fiscal para enjuiciar al peticionario. Lo prematuro de la argumentación sale entonces al relieve, ya que no ha habido intento hasta ahora, por esgrimir dicha prueba contra el peticionario."

■ Sostiene el peticionario que de no interpretarse la Ley de Inmunidad de 1954 en el sentido de que si ésta no concede inmunidad automática, es decir, sin necesidad de que el testigo la pida, ese estatuto sería inconstitucional. Expresamos en *E.L.A.* v. *Aguayo*, 80 D.P.R. 552, 596 (1958) que los tribunales no se anticiparán a decidir cuestiones constitucionales antes de que sea necesario hacerlo. (⁴)

---

(⁴) Si viniéramos obligados a determinar la validez constitucional de esa ley a base del argumento esbozado por el peticionario, no podríamos llegar a otra conclusión que no fuera la de que *el estatuto no concede inmunidad automática.* Fue ese factor precisamente, uno de los defectos

En su cuarto señalamiento alega que habiendo sido excluido del proceso para servir como testigo de cargo, ello equivalió a una absolución de acuerdo con los términos del Art. 241 del extinto Código de Enjuiciamiento Criminal.

■ A la fecha en que él prestó declaración incriminando a Felipe Cabán Jiménez—pero sin incriminarse él en forma o modo alguno—ese Art. 241 había sido derogado. Sin embargo, al entrar en vigor las nuevas Reglas de Procedimiento Criminal en 30 de julio de 1963, tanto su texto como el de los Arts. 239 y 240 del mismo cuerpo legal, fueron adoptados por los incisos (c) y (d) de la Regla Núm. 247, que dicen así:

"(c) Exclusión de acusado para prestar testimonio. En un proceso contra dos o más personas el tribunal podrá, en cualquier momento después del comienzo del juicio pero antes que los acusados hubieren comenzado su defensa, ordenar que se excluya del proceso a cualquier acusado, de modo que pueda servir de testigo de El Pueblo de Puerto Rico. Cuando se hubiere incluido a dos o más personas en la misma acusación y el tribunal fuere de opinión que no existen pruebas suficientes contra uno de los acusados, deberá decretar que se le excluye del proceso, antes de terminarse el período de la prueba, de modo que pueda servir de testigo a su compañero.

---

señalados a la Ley de 1941 que dio margen a que se derogara ese estatuto y se aprobara el de 1954. *Diario de Sesiones de 1954* págs. 741 y 753. No abrigamos ninguna clase de dudas en cuanto a que la intención legislativa al pasar el referido estatuto fue revocar, por medios legislativos, la interpretación que se le dio a la Ley de 1941 por este Tribunal en el caso de *Batalla* v. *Tribunal de Distrito*, supra, donde se dijo que la referida ley tenía aplicación automática. No estamos obligados, como ya hemos expresado a determinar si la interpretación en el sentido de que no tiene aplicación automática es o no es constitucionalmente válida. Véase, sin embargo, 27 Rev. Jur. U.P.R. pág. 419; *United States* v. *Kimball*, 117 Fed. 156 (1902); *Burrell* v. *Montana*, 194 U.S. 572 (1904); *United States* v. *Lee*, 290 Fed. 517 (1923); *United States* v. *Monia*, 317 U.S. 424, véase también 18 U.S.C. sec. 3486, declarada constitucionalmente válida en *Ullmann* v. *United States*, 350 U.S. 422 (1956); 55 Colum. L. Rev. 636, donde se recomienda que la reclamación de inmunidad se solicite y que la resolución concediéndola o negándola conste por escrito tal y como lo establece la ley local.

"(d) Efectos. El sobreseimiento decretado de acuerdo con esta regla impedirá un nuevo proceso por los mismos hechos."

Se estableció como regla general por la jurisprudencia de California, desde un principio, que para que tuvieran aplicación los Arts. 239, 240 y 241, era necesario que: se radique una sola acusación contra los acusados; sean éstos conjuntamente y en un solo juicio procesados; y haya de parte del Ministerio Público una solicitud al Tribunal, sancionada por éste, expresando el deseo de la parte acusatoria de que se desestime la acusación que pesa contra uno de los acusados para que pueda éste ser usado como testigo de cargo, sin posibilidad de que pueda incriminarse. Tal solicitud debe ser hecha antes de que la parte defensora comience a presentar su prueba. *People* v. *Bruzzo*, 24 Cal. 41 (1864); *Pueblo* v. *Alsina*, 22 D.P.R. 458 (1915).

No tienen aplicación los mismos cuando el coacusado consciente y voluntariamente se sienta en la silla de los testigos; *People* v. *Snyder*, 74 Cal. App. 138; 239 Pac. 705; o cuando éste es acusado o procesado en juicio diferente. *Ex Parte Stice*, 70 Cal. 51, 11 pág. 459.

Los procedimientos llevados a cabo, no sitúan al peticionario dentro de las normas antes mencionadas. En primer término no fue éste incluido en la acusación ni procesado en el mismo juicio en que fue usado como testigo de cargo. Jamás el tribunal decretó su exclusión como coacusado en el proceso, ni ello era posible. De hecho, antes de haber éste prestado su testimonio, no había contra él ninguna acusación pendiente ante la jurisdicción criminal ordinaria. No fue sino tres meses después que allí se radicó la acusación en su contra. Durante todo el tiempo transcurrido, sólo se había enfrentado a un procedimiento especial, de naturaleza no criminal, ante la Sala de Menores del Tribunal Superior.

A pesar de que sostendremos la validez de la resolución recurrida que denegó la desestimación de las acusaciones deseamos consignar finalmente lo siguiente: Es correcta la

afirmación que hace el peticionario de que al llamarse a Ramón Suárez Sánchez a declarar contra Felipe Cabán Jiménez el 26 de agosto de 1963, el tribunal de instancia y su fiscal tenían pleno conocimiento, por las constancias en los autos de las causas, de que a tal testigo de cargo se le imputaban en dos querellas radicadas ante la Sala de Menores, la comisión, en concierto y de común acuerdo con Felipe Cabán Jiménez y José J. Calderón Velázquez, de los mismos hechos que se atribuían e imputaban a éstos ante la jurisdicción criminal ordinaria, de que se había celebrado vista ante la Sala de Menores a los fines de la renuncia de jurisdicción por esta Sala sobre las querellas y el traslado del asunto a la jurisdicción criminal ordinaria para tratarse a Ramón Suárez Sánchez como un adulto y de que, cuatro días antes del juicio, la Sala de Menores había renunciado su jurisdicción a esos fines, estando sujeto Ramón Suárez Sánchez a ser procesado por los mismos hechos a ventilarse en las causas contra Cabán y Calderón. Les constaba también que éste figuraba al dorso de la acusación como uno de los testigos de El Pueblo, no obstante alegar el fiscal ante la Sala de Menores en las querellas, que él había coparticipado en la comisión de los mismos hechos.

Sin embargo, el fiscal no incluyó en esas acusaciones a Suárez Sánchez como coautor de los delitos y en unión a Cabán y a Jiménez. Creyó que era, a la fecha en que se cometieron los hechos una persona menor de diez y ocho años, es decir, un niño a la luz de la definición que de esta voz daba, y sigue dando, el párrafo (c) del Art. 1 de la citada Ley Núm. 97 de 1955, cuya conducta debía ser ventilada ante la Sala de Menores. No se ocupó el fiscal de constatar bien la correcta edad de Suárez Sánchez al momento en que ocurrieron los hechos que causaron la muerte violenta de Israel Ruiz Nieves, o sea a las 12:30 de la noche del 23 al 24 de febrero de 1963. Y en eso consistió su serio error, y el de la Sala de Menores y el del letrado que asistió al presunto "niño"

en todo el trámite ante la Sala de Menores, porque el joven Ramón Suárez Sánchez a las doce en punto de esa noche había cumplido sus 18 años de edad, era un adulto a los fines del mencionado estatuto y estaba sujeto, treinta minutos después de esa medianoche, a ser procesado ante la jurisdicción criminal ordinaria del tribunal competente. (⁵)

---

(⁵) Nació en Río Piedras el 24 de febrero de 1945. El criterio más racional y seguro para la determinación o cómputo de la edad es la llamada "regla savigniana", que consiste en incluir completo el día del nacimiento sea cual fuere la hora de éste y contar hasta las doce de la noche de la víspera del día en que se nació. Nuestro Código Civil no tiene reglas para el cómputo de los años.—Véase su Art. 8.—Hemos decidido que el día natural comprende 24 horas contadas desde las doce de la noche. *El Pueblo* v. *Terrasa*, 28 D.P.R. 11, 13 (1920). En el cálculo de los días, ese Código rechaza el cómputo de fracciones de día. En su Art. 1860 dispone que en la computación del tiempo necesario para la prescripción el día en que comienza a contarse el tiempo se tiene por entero.

El Código Civil español en la enmienda de 1943 a su Art. 320 acoge este criterio, al igual que el alemán y el argentino. Sobre este punto el profesor de Murcia, Batlle Vázquez, en su Estudio sobre la Regla de Determinación o Cómputo de la Edad en la Legislación Civil, publicado en la Revista de Derecho Privado, Tomo 20 (1933) pág. 86, comenta:

"En cambio, el criterio de la escuela de SAVIGNY, seguido, como hemos dicho, por el Código civil alemán,—art. 187, pár. 2do.—cuenta íntegro el día del nacimiento, y, por tanto, la edad se entiende cumplida al comenzar el día aniversario. También se acepta esta posición en el Derecho argentino, puesto que, como dice SALVAT, el artículo 128 del Código civil de esta nación dice que la incapacidad de los menores cesa el día en que cumplieren veintidós años, y, por consiguiente, los actos realizados en ese día serían perfectamente válidos desde el punto de vista de la edad.

"Sin vacilar nos pronunciamos de modo general por este último sistema, porque ello es conforme a la consideración de día inicial de la prescripción que cabe asignar al del cumpleaños, porque las normas relativas a la capacidad deben interpretarse en sentido amplio y favorable a la *facultas agendi*, y porque existe la ventaja práctica de que, siendo el criterio romano el que debe considerarse vigente en los territorios de Cataluña y Navarra, se logra la uniformidad en este punto.

"La teoría que exponemos tiene además la ventaja de acomodarse en un todo a la concepción vulgar de la edad y a los usos sociales establecidos. Los familiares y amigos se apresuran a felicitar a sus allegados en su cumpleaños, en cuanto tienen ocasión, sin esperar hora o momento alguno especialmente determinado para hacerlo. Es una razón más que milita en pro de la adopción de la regla savigniana."

Véanse *Ross* v. *Morrow*, Vol. 85, Texas Reports, págs. 172 y 175; *State* v. *Joyce*, 123 La. 637, 49 So. 221.

■ Al cómputo erróneo de la edad que entonces se hizo, repetimos, se debió, sin duda, la no inclusión de Ramón Suárez Sánchez en las acusaciones formuladas únicamente contra Cabán y Calderón y la indebida radicación de las querellas ante la Sala de Menores. Pero esto no constituye la exclusión definitiva de un proceso criminal contemplada por los antiguos Arts. 239, 240 y 241 del Código de Enjuiciamiento Criminal, cuyos textos siguen vigentes en la Regla 247. Tan es así, que su caso fue trasladado a la jurisdicción ordinaria para ser procesado como un adulto, aunque, como hemos indicado, para ese fin el traslado era innecesario.

■ También es cierto que al empezar el menor a declarar no se le hizo advertencia del derecho a no incriminarse y a tener asistencia de abogado, bajo las circunstancias concurrentes respecto a él.

El resumen de su declaración en juicio que dimos al comienzo de esta ponencia, a nuestro juicio demuestra que tal declaración no tiende en forma alguna a incriminarlo. Sin embargo, su letrado sostiene en este recurso lo contrario. Por esa razón dispondremos en la sentencia que se dictará en este recurso que la declaración que prestó el peticionario en el juicio celebrado el 26 de agosto de 1963, en los casos Números G-63-420 y M63-787, contra Felipe Cabán Jiménez, del Tribunal Superior, Sala de San Juan, no podrá en forma alguna ser utilizada por el Pueblo de Puerto Rico como evidencia en su contra, ni hacerse alusión o referencia alguna durante el juicio o juicios que se celebren en su contra en virtud de las acusaciones que le formuló separadamente el fiscal el 7 de noviembre de 1963, bajo los números G-63-1971 y M63-2196. [6]

*Se confirmará la resolución recurrida.*

---

[6] Por razón de que el peticionario Ramón Suárez Sánchez era un adulto según hemos concluido, en el día de hoy estamos dictando sentencia revocando la convicción de Felipe Cabán Jiménez al no resolver el Juez, e instruir al jurado, que la declaración de Suárez Sánchez contra Cabán necesitaba ser corroborada.