# 98 DTA 171

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ

HERIBERTO RIOS
Demandante-Recurrido

v.

FELIPE PEREZ VALENTIN
Demandado Contra Tercero-Peticionario

v.

HERIBERTO CRUZ CAPELLA
Tercero Demandado-Recurrido

Núm. KLCE-97-00475

San Juan, Puerto Rico, a 22 de abril de 1998

Panel integrado por su Presidente, el Juez Rossy García
y los Jueces Martínez Torres y Rodríguez García

Rodríguez García, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El peticionario Felipe Pérez Valentín, objeto de una acción de filiación de parte de un demandante mayor de edad, acude ante este Tribunal requiriendo expidamos auto de *certiorari* para revocar una Resolución del Tribunal de Primera Instancia, Sala de Aguadilla (Hon. Miguel A. Montalvo, Juez), que denegó declarar Inconstitucionales ciertos Artículos de la Ley Especial Sobre Sustento de Menores. Luego de la debida consideración, denegamos la expedición del auto solicitado.

### I. Trasfondo fáctico

La acción de filiación que origina el presente recurso, fue presentada por don Heriberto Ríos (en adelante, *"Ríos"*), quien nació en Aguadilla, Puerto Rico, en 2 de agosto de 1973. La demanda original se presentó en 22 de septiembre de 1973, habiendo Ríos alcanzado la mayoría de edad. La acción filiatoria se dirige contra su alegado padre biológico, don Felipe Pérez Valentín, (en adelante, *"Pérez"*).

Luego, en 29 de noviembre de 1994, presentó Ríos una primera demanda enmendada en la que continúa alegando que su padre biológico es Pérez, pero además alega que *"[s]in embargo existen personas que dicen que el padre biológico lo es el antes mencionado Heriberto Cruz Capella"* (en adelante *"Cruz"*), de quien su madre se había divorciado en 22 de mayo de 1970, casi tres años antes de su nacimiento.

Los demandados fueron emplazados y en 8 de febrero de 1995 compareció Cruz, por derecho propio, en un escrito que se titula erróneamente *"Demanda Enmendada"*, cuando era un escrito en contestación a la demanda, y cándidamente indica que *"[n]i se niegan ni se aceptan"* las alegaciones identificadas con los *"números 5, 6 y 8"*. La alegación número 6 es el *"sin embargo"* citado antes. Cruz indica además que *"[e]l aquí compareciente no tiene objeción alguna a hacerse las pruebas de paternidad que corresponda, [y] aceptar el resultado de las mismas pero no ha de pagar el costo de realizarlas."*

Pérez compareció representado por abogado, el Lcdo. Pedro García Mejías, y negó ser el padre biológico del demandante y aseveró que *"...Felipe Pérez Valentín; seguro de no ser el padre del demandante no tiene objeción alguna en someterse a cualquier prueba médica o científica que le sea requerida por orden del Honorable Tribunal y los [sic] cuales demostrarán fehacientemente su exclusión en la paternidad alegada por el demandante."* ▮ Luego de los trámites de rigor, incluyendo la anuencia de los supuestos padres demandados, se realizaron pruebas para determinación de probabilidad de paternidad en tres laboratorios distintos, en y fuera de Puerto Rico.

### A. El Laboratorio de Histocompatibilidad del Departamento de Patología del Recinto de

**Ciencias Médicas de la Universidad de Puerto Rico.**

Este laboratorio determinó que; *"Heriberto Cruz Capella no puede ser el padre de Heriberto Ríos, por no poseer el haplotipo obligatorio presente en el menor".* ▇Ello consta en comunicación dirigida a la Hon. Leticia Espada Roldán, Juez del Tribunal de Primera Instancia, Sala de Aguadilla, fechada en 5 de mayo de 1995, por el Dr. Angel Rodríguez Trinidad. (Pág. 77, Ap. Petición de *Certiorari*)

El mismo laboratorio, y bajo la firma del mismo médico, en la misma fecha, 5 de mayo de 1995, y dirigida a la Juez Leticia Espada Roldán, establece que: (Pág. 76, Ap. Petición de *Certiorari*)

*"De todo ello se desprende que el señor Felipe Pérez Valentín no se puede excluir de ser el padre de Heriberto Ríos, ya que puede aportar el haplotipo obligatorio A24, B50 presente en el menor.*

*La probabilidad relativa de que el señor Felipe Pérez Valentín sea el padre es de 91.4%."*

**B. Laboratorio *"Analitical Genetical Testing Service"*, de Denver, Colorado.**

Este laboratorio en informe fechado en 31 de julio de 1995, dirigido al Dr. Angel Rodríguez Trinidad, concluye que *"The Alleged Father Is Not Excluded"*, refiriéndose a Pérez. El informe lo firma el Dr. Moses S. Schanfield. (Pág. 79, Ap. de *Certiorari*)

El Dr. Rodríguez Trinidad le remite dicho informe a la Juez Leticia Espada, y le aclara que: (Pág. 78, Ap. Petición de *Certiorari* )

*"Analitical Genetic Testing Center, Inc."* no informa un porcentaje de probabilidad relativa de paternidad; ya que aún no han realizado un estudio de frecuencia en las carasterísticas DNA estudiadas en el caso.

**C. Laboratorio Cellmark, en Germantown, Maryland.**

El Dr. Adolfo Pérez Comas, del Laboratorio Endocrinología y Genética Médica con oficinas en Santurce y Mayaguez, envió muestras de sangre y huellas dactilares al Laboratorio Cellmark, en Germantown, Philadelphia, para determinación de paternidad.

La conclusión del Laboratorio Cellmark, transmitida al Dr. Pérez-Comas en 7 de noviembre de 1995, fue la siguiente: (Pág. 89, Ap. Petición de *Certiorari*)

*"Felipe Pérez cannot be excluded as the biological father of Heriberto Ríos, based on the attached data. Using a prior probability of 0.5, the probability of paternity is 99.99% as compared to a random man from the Black population, 99.87% as compared to a random man from the Puerto Rican population, and 99.80% as compared to a random man from the Caucasian population.*

*Based on the combined DNA Fingerprint and DNA Profile data, it is the opinion of the undersigned that Felipe Pérez is the biological father of Heriberto Ríos."*

El Dr. Adolfo Pérez-Comas remitió los hallazgos recibidos de Cellmark con una detallada explicación de los procedimientos a la Juez Leticia Espada y a los Lcdos. Pedro García Mejías y H. García Aguirre, el primero abogado de Pérez, y el segundo abogado de Heriberto Ríos, en carta de 12 de diciembre de 1995.

Estos informes forman parte del Apéndice al escrito denominado; *"Escrito de Demandado y Tercero Demandante Planteando Inconstitucionalidad de Disposiciones de la Ley Especial de Sustento de Menores Según Enmendada Por La Ley 86 de 17 de agosto de 1994"*. Dicho escrito esta fechado el 8 de febrero de 1996, e iba en síntesis dirigido a que el Tribunal de Instancia decretara que ciertos Artículos de la Ley Especial de Sustento de Menores, fuesen declarados insconstitucionales, en un caso de filiación que no tiene nada que ver con el sustento de un menor, sino con el reclamo de filiación de un adulto, mayor de edad.

La SUPLICA del escrito reclama del Tribunal de Instancia:

*"Respetuosamente se ruega que previo los trámites de ley correspondientes se declare con lugar la moción de instancia, de la cual se hace formar parte integrante la contestación del demandado a la demanda enmendada y la demanda contra tercero, ambas anejadas, y en consecuencia se ordene y decrete que las disposiciones de la LEY ESPECIAL DE SUSTENTO DE MENORES, según enmendada mediante la Ley 86 de 17 de agosto de 1994, contenidas en el penúltimo párrafo del artículo 11(B)(3)(c) y el artículo 13(2)(c) del estatuto son inconstitucionales de su faz, por las razones de ley ya informadas, con todo otro pronunciamiento a que hubiere lugar"* ■

El Tribunal de Primera Instancia, Sala Superior de Aguadilla (Hon. Miguel A. Montalvo, Juez), dispuso mediante Resolución fechada en 11 de abril de 1997, que:

*"A) Se declara SIN Lugar el planteamiento de Inconstitucionalidad de la Ley Especial de Sustento de Menores, presentada por el co-demandado Felipe Pérez Valentín. Los procedimientos en este caso se verán no a base de dicha Ley, sino a la Ley de Evidencia y a las Reglas de Procedimiento Civil.*

*B) A base de lo anterior, se declara sin Lugar la solicitud de intervención de ASUME."*

El Tribunal de Instancia señaló que el caso de filiación presentado en el año 1994, se estaba moviendo con lentitud y dictaminó determinadas medidas procesales para acelerar la disposición del caso. La notificación de la Resolución a las partes se archivó en autos en 18 de abril de 1997.

No conforme, Pérez presentó una moción de reconsideración en 2 de mayo de 1997, y según la Petición de *Certiorari, "el día 9 de mayo se notificó por teléfono resolución de No Ha Lugar tan pronto se reciba la orden emitida será unida al apéndice como su página 208."*

La orden emitida nunca llegó a nosotros.

No obstante ello, la Petición de *Certiorari* se presentó ante este Tribunal de Circuito de Apelaciones en 16 de mayo de 1997, es decir, dentro del término de treinta (30) días del archivo en autos de la notificación de la Resolución declarando sin lugar el pedido de Pérez ante el Tribunal de Instancia.

Con el beneficio de la comparecencia de todas las partes, incluyendo la Oficina del Procurador General, procedemos a resolver el planteamiento ante nos, y por los fundamentos que exponemos denegamos la expedición del auto de *certiorari* sol citado.

## II. El derecho.

A. La interposición del presente recurso es prematura.

En primer lugar, cabe señalar que el recurso de *certiorari* presentado por Pérez ante este Tribunal Apelativo es prematuro. Se pretende nuestra intervención para que resolvamos *a priori* un hecho futuro e incierto, que pone en entredicho una posición firme y razonable de un Tribunal de Instancia, para resolver un caso ante su consideración. Motiva el presente recurso la opinión de la representación legal de Pérez quienes afirman que el Tribunal de Primera Instancia vendrá obligado a resolver el caso de filiación de una persona mayor de edad que tiene ante sí a base de unas disposiciones que contiene la Ley Especial de Sustento de Menores, ley que no cubre la acción que en el presente caso se ejercita. El fundamento ofrecido de que bajo la Constitución de Puerto Rico y la doctrina de *Ocasio v. Díaz*, 88 D.P.R. 678 (1963), no puede haber criterios distintos para determinar paternidad cuando se trata de una acción que conlleva una pensión alimenticia y otra acción que no envuelve tal pedido. Este argumento no nos convence. En Puerto Rico se ha declarado Constitucional el utilizar procedimiento de filiación especial mixto criminal y civil, cuando conlleva pensión alimenticia, y dicho proceso no está disponible para un reclamante de filiación, mayor de edad. Artículo 158 del Código Penal, que analizamos más adelante.

En su Resolución de 11 de abril de 1997, el Tribunal de Primera Instancia, por voz del Juez Miguel

A. Montalvo, dictaminó que el caso se vería al amparo de la Ley [sic] ■ de Evidencia y las Reglas de Procedimiento Civil, no al amparo de la Ley Especial de Sustento de Menores. Ante tan claro dictamen, Pérez decidió que el Tribunal no cumpliría con su dictamen, o que vendría obligado a resolver bajo la Ley de Sustento de Menores que contiene una presunción incontrovertible, que amarraría inescapablemente a Pérez, a unas pruebas científicas. Pérez argumenta que tal presunción es inconstitucional, cosa que no tenemos que resolver.

Se trataba de permitirle, de darle la oportunidad al Tribunal de Primera Instancia, Sala de Aguadilla, de ver el caso en su fondo y entonces si el Tribunal basaba su sentencia en la temida Ley de Sustento de Menores, acudir ante nos en apelación, recurso que siempre estará disponible al demandado si le resulta adverso el dictamen del Tribunal de Instancia, recurso que presentado en tiempo y de conformidad con la ley y los reglamentos aplicables no tenemos discreción para negarnos a resolver.

Entretanto, contrario al claro mandato de la Regla 1 de las de Procedimiento Civil sobre economía procesal, ■ un simple caso de filiación de un adulto que se presentó en septiembre de 1994, se encuentra sin resolver en abril de 1998.

B. No siendo aplicable a la controversia ante nos la Ley Especial de Sustento de Menores, este Tribunal no puede resolver el planteamiento Constitucional sobre dicha Ley, bajo la doctrina de abstención.

En su breve y muy acertada comparecencia, la Oficina del Procurador General, indica que el Tribunal Supremo de Puerto Rico, en el reciente caso de *Caquías v. Asociación de Residentes de Mansiones de Río Piedras* ___ D.P.R. ___ (1993), **93 J.T.S. 127,** reitera lo antes dicho en el sentido de que al ejercer nuestra función revisora los Tribunales debemos considerar que la validez de las leyes se presume. Por lo tanto, no debemos anticiparnos a decidir una cuestión sobre Constitucionalidad de una ley, antes de que sea necesario hacerlo o cuando los autos son inadecuados para hacer una determinación de tal índole. Así se ha expresado anteriormente el Tribunal Supremo en *Vélez Ramírez v. Romero Barceló,* 112 D.P.R. 716 (1982); *Vives Vázquez v. Tribunal Superior,* 101 D.P.R. 139 (1978); *Esso Standard Oil v. A.P.P.R.,* 95 D.P.R. 772 (1968); *Suárez Sánchez v. Tribunal Superior,* 92 D.P.R. 507 (1965); *E.L.A. v. Aguayo,* 80 D.P.R. 552 (1958).

Bajo la presunción de corrección Constitucional de las leyes promulgadas por la Asamblea Legislativa, ante un planteamiento de Inconstitucionalidad de una ley, los Tribunales debemos caminar por el sendero que se nos fijó desde *E.L.A. v. Aguayo, supra,* por el Tribunal Supremo de Puerto Rico, siguiendo con aprobación el catálogo de normas de auto limitación que se ha impuesto el Tribunal Supremo de Estados Unidos, recogidas por el Juez Brandeis en su clásica opinión concurrente en *Ashwander v. Tennessee,* 297 U.S. 288, 346 (1935), el cual reproducimos:

*"1.-La Corte no juzgará la validez constitucional de una ley en un procedimiento amigable, no adversativo, rehusando hacerlo porque 'es legítimo decidir esas cuestiones únicamente como último recurso, y cuando es necesario en la determinación de una real, genuina y seria controversia.*

*2.-La Corte 'no se anticipará a decidir una cuestión de derecho constitucional antes de que sea necesario hacerlo'.*

*3.-La Corte 'no formulará una regla de derecho constitucional más amplia que la que requieran los hechos precisos a los cuales ha de aplicarse'.*

*4. La Corte no juzgará una cuestión constitucional aunque haya sido sometida propiamente en los autos, si también se somete un fundamento de otra índole que permita disponer del caso.*

*5.-La Corte no juzgará la validez de una ley a petición de uno que no puede probar que su aplicación le causa daños.*

*6.-La Corte no juzgará la constitucionalidad de una ley a instancia de uno que se ha valido de sus beneficios.*

*7.-Cuando se cuestiona la validez de una ley del Congreso, y aun cuando se suscite una duda seria sobre su constitucionalidad, es un principio cardinal que esta Corte primero se asegurará de si existe una interpretación razonable de la ley, que le permita soslayar la cuestión constitucional."*

En los últimos años se ha añadido una restricción adicional.

La Corte no entenderá en una cuestión constitucional si los autos no son adecuados para hacer una determinación de esa índole. *Rescue Army v. Municipal Court,* 331 U.S. 549, 575 (1946); *International Brotherhood v. Denver Milk Producers,* 334 U.S. 809 (1948); *Parker v. Los Angeles,* 338 U.S. 327, 329 (1949).

C. No opera como camisa de fuerza el criterio de *in pari materia* para obligar al Tribunal de Instancia a resolver la controversia bajo la Ley impugnada.

El Tribunal de Instancia no está obligado en los casos de filiación de un adulto, a ceñirse a los estrictos parámetros establecidos por el Legislador, cuando como apéndice a un caso de filiación se encuentra el clamor del derecho de alimentos de un menor. El criterio de *in pari materia,* no obliga a un tribunal de instancia a aplicar a una controversia jurídica enmarcada en una política pública con unos perfiles jurisprudenciales bien determinados, como lo hizo el Tribunal Supremo de Puerto Rico en el caso de inolvidable impacto social de *Ocasio v. Díaz,* 88 D.P.R. 678 (1963) --cuya premisa fundamental fue derrotar la pared social de clasificación de los hijos a base del origen del nacimiento-- a una acción predicada en la legislación elaborada y aprobada por la Asamblea Legislativa de Puerto Rico --cuya premisa fundamental es que un menor no puede ser desprovisto de las necesidades básicas para su sustento como ser humano, un lecho, un techo, comida, médico y medicinas, y educación-- si existe un padre que puede proveérselos, lo cual significa una controversia jurídica distinta.

Cuando se trata de lo primero la acción filiatoria de un adulto, se pueden utilizar todos los recursos de descubrimiento de prueba, se pueden solicitar todas las prórrogas posibles, y mientras tanto el adulto que reclama filiación, como en este caso, está en condiciones de proveerse sus alimentos mediante un empleo remunerado. En el caso de autos don Heriberto Ríos, el demandante, le dice al Tribunal en su demanda que él está en condiciones de sufragar los gastos de las pruebas genéticas determinantes de paternidad.

Cuando se trata de un menor de edad, la situación es distinta y como cuestión de política pública se le brinda un trato distinto por la Asamblea Legislativa.

De general conocimiento es el actual Artículo 158 del Código Penal de 1974, 33 L.P.R.A. sec. 4241, el cual tipifica el delito de incumplimiento de la obligación alimentaria, y que procede de los anteriores Artículos 263 a 265 del Código Penal de 1937, que cubría los delitos de abandono y descuido de menores. Aquel procedimiento al que los abogados nos referíamos como, *"el procedimiento sumario de filiación",* proveía un procedimiento con todas las ventajas al menor abandonado por su padre, y fue objeto de ataque sobre bases de Constitucionalidad, ataques que fueron rechazados por el Tribunal Supremo de Puerto Rico. *Pueblo v. Vélez Vélez,* 97 D.P.R. 123 (1969)

El Artículo 158 del Código Penal, es un procedimiento sumario rápido y sencillo para obligar al padre de un menor a proveerle su sustento. *Charana v. Pueblo,* 109 D.P.R. 641 (1980 ).

*Véase la sumariedad de aquel procedimiento:*

*"-El acusado que niegue la paternidad tendrá un plazo de no más de diez (10) días para que conteste la "alegación", que no es otra cosa que la imputación de paternidad, ergo, abandono de su abligación alimentaria.*

*-Inmediatamente se celebrará el juicio en el cual se seguirán las reglas para la presentación de evidencia vigentes.*

*-Dentro del quinto día de haberse escuchado la prueba el Juez resolverá sobre la paternidad.*

*- De resultar probada ésta, levantará un acta al efecto y dictará la resolución correspondiente fijando además, la cuantía que por concepto de alimentos deberá proveerle al hijo.*

*-Las vistas sobre estos casos tendrán preferencia en el calendario.*

*-La apelación en estos casos no tendrá el efecto de suspender el pago de alimentos.*

*-En caso de apelación, el acusado y convicto tiene que depositar en la Secretaría la suma impuesta.*

*-El tribunal puede disponer que se le pague la pensión al alimentista, aunque exista apelación;*

*-Si resultara absuelto el acusado en apelación, "el alimentista vendrá obligado a devolver las cuantías que el acusado hubiere consignado para su beneficio".*

*-Cuando fuere firme la sentencia mediante aceptación de la paternidad por el acusado, o por imposición del Tribunal, se inscribirá el hecho en el Registro Demográfico, "para todos los efectos".*

*-En todas las acciones bajo este Artículo, el interés público estará representado por un Fiscal de Distrito, uno Auxiliar, o el que el Secretario de Justicia designe."*

A ningún abogado se le ha ocurrido utilizar el procedimiento del Artículo 158 del Código Penal de 1974, o su antecesor del Código Penal de 1933, para reclamar filiación para una persona mayor de edad.

Finalmente, cabe señalar que el Tribunal Supremo ha sostenido la utilidad de los exámenes genéticos por su precisión científica en los casos de determinación de paternidad. Por tanto, será lo expuesto por dicho Tribunal en *Rivera Pérez v. León*, ___ D.P.R. ___ (1995), **95 J.T.S. 93**; en *Pueblo, v. Maisonave Rodríguez*, ___ D.P.R. ___ (1991), **91 J.T.S. 67**; y en *Ortiz v. Peña,* 108 D.P.R. 458 (1879) --así como la enmienda introducida por la Asamblea Legislativa a la Regla 82 de las de Evidencia de 1979-- la guía del Tribunal de Primera Instancia, Sala de Aguadilla, en el uso de los resultados de los exámenes genéticos obtenidos en el presente caso, y no la Ley Especial de Sustento de Menores.

Por los fundamentos expuestos se deniega la expedición del auto de *certiorari* solicitado.

Lo acordó y ordena el Tribunal y certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 98 DTA 171**

**1.** Como se indica más adelante, las pruebas genéticas no demostraron lo alegado, sino el contrario.

**2.** Obviamente la referencia al *"menor"* es un error.

Las partes de la Ley Especial de Sustento de Menores, cuya validez Constitucional el recurrente pone en entredicho son:

*"El penúltimo párrafo del Artículo 11(b)(3)(C):*

*(C) Exámenes genéticos.*

*..........*

*Así también, se presumirá controvertiblemente la paternidad en aquellos casos en que el examen genético ordenado por*

*el Administrador o el Juez Administrativo produzca una probabilidad de paternidad de noventa y cinco (95) a noventa y siete punto nueve (97.9) por ciento. Se presumirá incontrovertiblemente la paternidad en los casos en que el examen genético ordenado por el Administrador o el Juez Administrativo produzca una probabilidad de noventa y ocho (98) por ciento en adelante."*

El párrafo 13(2)(c) de la Ley.

"............

*Se presumirá controvertible la paternidad en aquellos casos en que el examen genético ordenado por el Examinador o por el tribunal produzca una probabilidad de paternidad de noventa y cinco (95) a noventa y siete punto nueve (97.9) por ciento. Se presumirá incontrovertible la paternidad en los casos en que el examen genético ordenado por el Examinador o el tribunal produzca una probabilidad de paternidad de noventa y ocho (98) porciento en adelante. "*

**4.** Con la aprobación por la Legislatura de las Reglas de Evidencia sometídales por el Tribunal Supremo de Puerto Rico para su consideración en el año 1979, quedó sin efecto la Ley de Evidencia que había sido adoptada de California en el año 1902.

**5.** Estas Reglas [s]e interpretarán de modo que garanticen una solución justa, rápida y económica de todo procedimiento.