### UNITED STATES v. LEE et al.

(District Court, N. D. Texas, Fort Worth Division. May 28, 1923.)

No. 2267.

1. **Criminal law ⬡⇒42—Immunity because of information given Trade Commission.**

Under Federal Trade Commission Act Sept. 26, 1914, § 9 (Comp. St. § 8836i), providing that "no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify, or produce evidence, documentary or otherwise, before the commission in obedience to a subpœna issued by it," the fact that defendants, as officers of certain common-law trusts, were required to, and did, furnish to the commission information in respect to the organization and operations of such trusts, not under oath nor pursuant to subpœna, and without claim or suggestion at the time that it might personally incriminate them, *held* not to give them immunity from prosecution for fraudulent use of the mails in promoting such trusts as schemes to defraud, where such prosecution was wholly independent of the information so given, which was unknown to the postal authorities, who caused its institution.

2. **Criminal law ⬡⇒42—Immunity because of information given Trade Commission.**

Under Federal Trade Commission Act Sept. 26, 1914, § 9 (Comp. St. § 8836i), to entitle a person to immunity from prosecution because of information given the commission, he must have put the government on notice that the information required might tend to incriminate him, and that it was given only in consideration of the immunity afforded by the statute.

Criminal prosecution by the United States against Robert A. Lee and others. On special pleas by defendants Sherwin and Schwarz. Overruled.

Defendants above named are charged with the devising of a scheme or artifice to defraud and the subsequent use of the mails in consummation thereof, in violation of section 215 of the federal Penal Code (section 10385, U. S. Comp. Stats.), and also, in a separate count, with entering into a conspiracy to violate said section 215. Briefly, the scheme was that defendants would and did organize certain companies in the guise and under the name of "common-law trusts," one of which was called the "General Lee Interests No. 1," another the "General Lee Interests No. 2," and the third "General Lee Development Interests." All these were for the pretended purpose of engaging in the production and sale of oil and gas leases and the engaging in the oil business in general for profit; that they would issue large amounts of stock or certificates of beneficial interests in said company, and sell the same to all persons whom they could induce to buy the same by means of false and fraudulent representations, pretenses, and promises concerning said companies and their business; and also that they would make representations as to the standing, character, and qualifications of defendant Robert A. Lee, claiming that he was related to Robert E. Lee.

Specifically, it was represented that the companies were under the personal and complete management and direction of Robert A. Lee, a descendant of the great Confederate general, Robert E. Lee; that Robert A. Lee

⬡⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was a great engineer of proven ability and long and successful experience, who had located scores of successful oil wells; further, that he had located the mother lode of the Mexia field; that he had just located and was preparing to drill in the apex of the most promising oil field in Texas, and that through maturing of plans laid out by him one of the most ambitious enterprises the oil world had ever known would be consummated; that it was only through his personal influence that the vast acreage at his command had been obtained, and that he was offering his friends the opportunity to share his good fortune with him; that as Gen. Robert E. Lee gave his life to the cause of the South, so Gen. Robert A. Lee was giving his life to the oil industry and the great cause of humanity.

The falsity of these various representations and promises was averred with identic detail, and it was charged that Robert A. Lee was in no wise related to Gen. Robert E. Lee, nor even to the historic Lee family; that he was neither geologist, engineer, nor oil man; that he had made no discovery of oil in the mother lode nor otherwise, and was nothing but a common laborer theretofore employed in the state capitol of Idaho; that in fact he had loaned his name to the scheme devised and the Gen. Robert A. Lee Company controlled by the defendants Sherwin and Schwarz for the agreed sum of $12.50 per week.

The defendants, Charles Sherwin and Harry H. Schwarz, above mentioned, filed a special plea by way of immunity from prosecution, alleging that they were connected as officials with the common-law trusts referred to hereinabove, and that prior to the convening of the grand jury returning the indictment herein one J. F. Southworth, a special examiner of the Federal Trade Commission, came to the offices of the defendants and demanded documentary evidence concerning said companies and of the participation by these defendants in the promotion of said companies, and demanded that the defendants and each of them answer his lawful inquiries with respect to said companies and the promotion thereof; that the demand was made by Southworth under the pains and penalties of violating the law and subjecting themselves to imprisonment and fine in case of a refusal; that thereupon, in obedience to said demand of the said Federal Trade Commission, acting by and through its authorized agent, "these defendants produced, exhibited, and delivered to said officer said documentary evidence showing how and in what manner said oil companies were organized, and showing the connection of these defendants therewith and of other persons therewith, and of the character and kind of business then being done, and the nature of said business, and in fact all of the documents and records of said oil companies then in possession of these defendants," and in addition thereto "did orally testify before said officer, and answer all of the questions then and there by him propounded, and fully complied in every way with the demands of said Federal Trade Commission acting by and through said officer under the pains and penalties of the law."

It was then asserted in said plea that thereafter the grand jury for this district convened, and the evidence given by these defendants to the Federal Trade Commission was delivered over and produced before said grand jury, and upon said evidence, or at least a major part thereof, the grand jury found the bill of indictment. It was also asserted that because of the facts above set out, under authority of sections 8836i and 8836j of the United States Compiled Statutes, the defendants stand entitled to complete immunity herein. A demurrer to the immunity plea having been overruled, the government filed a replication.

Both parties consenting, the issues of fact raised by the plea of immunity and replication thereto were tried before the court without a jury. Upon the hearing, it developed that a form letter was sent from Washington by the secretary of the Federal Trade Commission to the General Lee Development Interests, requesting information in accordance with a schedule or questionnaire appended thereto. No attention was paid to this, and some time thereafter the special examiner, Southworth, appeared at the office of the companies in Fort Worth and asked for the information theretofore requested. Defendants demurred, apparently in the belief that the law creating the Federal Trade Commission and defining its jurisdiction had no ap-

plication to common-law trusts. A conference was had with their attorney, and as a result he was impressed with the belief that such a concern as had been organized by the defendants was subject to the jurisdiction of the commission. In that connection it is asserted that certain portions of the law contained in section 8836i, supra, relating to the enforced production of evidence, whether it might tend to incriminate the parties or not, was read to the defendants. That portion of the same paragraph granting them immunity was not read to them, nor mentioned in their presence. Accepting the advice of their counsel that the common-law trusts organized by them were subject to the jurisdiction of the commission, they answered in considerable detail the numerous questions contained in the questionnaire, and also exhibited certain letters to and from their stock or unit holders, and certain correspondence having to do with adjusted and unadjusted complaints arising out of the sale of stock or units. No subpœna was issued, neither of the defendants were sworn, and none of the statements made by them were made under the sanctity of an oath.

A post office inspector in this district testified that he, and he alone, was responsible for the presentation to the grand jury of the matters leading up to the indictment; that none of the evidence presented to the grand jury had been obtained from or secured by the Federal Trade Commission, and that he was unaware at the time of such presentation, which arose because of complaints coming to him as post office inspector, that the matter had previously been the subject of consideration by the commission at all.

Henry Zweifel, U. S. Atty., of Fort Worth, Tex., and John S. Pratt, David Cahill, and Sylvester R. Rush, Sp. Asst. Attys. Gen.

McLean, Scott & Sayers, of Fort Worth, Tex., for defendants.

BLEDSOE, District Judge (after stating the facts as above). [1] The statute creating the Federal Trade Commission (38 Stat. 717 et seq. [section 8836a et seq., U. S. Comp. St.]), was intended to provide an instrumentality of the government by which in a general way the injustices arising from unfair competition in business might be prevented and certain standards of business morality raised. The commission was authorized to take cognizance of complaints involving asserted unfair competition, and in addition authorized to gather and compile information with respect to the organization, business conduct, practices, and management of corporations, looking to the matters of the sort and kind of trade and commerce conducted by such corporations. Among other things, the act provided (section 9 [section 8836i, U. S. Comp. St.]) that, for the purposes of the act, the commission, or its duly authorized agent or agents, shall at all reasonable times have access to the business of any corporation for the purpose of examining it, and the right to copy any documentary evidence of any corporation being investigated or being proceeded against. The commission is given power to require by subpœna the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the commission may sign subpœnas, and members and examiners of the commission may administer oaths and affirmations, examine witnesses, and receive evidence. Provision for the attendance of witnesses at such places as may be desired or necessary is made. It is specially provided that:

"No person shall be excused from attending and testifying or from producing documentary evidence before the commission or in obedience to the

subpœna of the commission on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify, or produce evidence, documentary or otherwise, before the commission in obedience to a subpœna issued by it."

From the testimony adduced at the hearing hereat, it is apparent that, pursuant to request or demand made by the commission, or one of its special examiners, the defendants gave answer to certain questions contained in a lengthy questionnaire, and permitted inspection or furnished copies of certain documentary evidence in their possession. With respect to the latter, it may be said that it all pertained and perhaps belonged to the common-law trusts which they had organized, and of which they severally were trustees. Whether as such, under the holding in Wilson v. U. S., 221 U. S. 361, 31 Sup. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558, they possessed no privilege respecting a disclosure of the same, need not now be determined. It is now asserted by them that the evidence given by them pursuant to the above-mentioned demand or request concerned and touched upon the matters embraced in the charge pending herein; that, in consequence, pursuant to the terms of the immunity provision quoted, they are immune from prosecution and should be dismissed herefrom.

It is the fact that no subpœna was issued and that neither of the defendants were sworn concerning the matters with respect to which they furnished the commission with information. It is also the fact that the questionnaire, containing some 50 or more questions, touched upon the organization and business methods, conduct, nature, and sources of the business of these common-law trusts or companies that had been organized by the defendants, and the engagement in which, and furtherance of which, it is charged, constituted a part of the scheme or device to defraud lying at the base of the present prosecution. There is undisputed testimony that the defendants at first declined, or just perhaps neglected, to make answers to the questions contained in the questionnaire when the same was first forwarded to them by the commission. However, they were pressed for a compliance by the special examiner of the commission, he making a number of personal calls at their place of business. Finally, having certain provisions of the Federal Trade Commission statute read to them, and being advised by counsel that it was their duty, under the law, as a common-law trust, to submit to the jurisdiction of the commission and give the information desired, they acceded to the request.

It was specially developed in the evidence that at no time was the law respecting immunity, as set forth hereinabove, read to them, and it is not only the fair, but the necessary, inference, in my judgment, from all of the testimony, that at no time did they give information or furnish documentary evidence to the examiner because of any reliance or belief by them that, as a consequence of the giving of such information or evidence, they would be the recipients of, or be entitled to, immunity with respect to any matter concerning which they were examined. It is the fact that no claim or suggestion was made by

either of them at any time that any information sought or questions asked, or any answers required to be given, would in any wise serve or tend to incriminate them or either of them. It is also the undisputed evidence that the postal inspector, responsible for the initiating of the present prosecution, who secured the evidence and caused it to be presented to the grand jury, obtained none of his information from the Federal Trade Commission or any agent thereof. Presumably all the information secured by the commission was transmitted to its office in Washington in due course and is now on file and undisturbed among the archives.

These being the facts, the question presented is: Does the transaction in its entirety, as I have sketched it, suffice, under the provision of the Federal Trade Commission Act, to operate as a general amnesty of these defendants concerning all the matters having to do with their operation, management and conduct of the business of these three common-law trusts? It has been decided by the Supreme Court of the United States in Brown v. Walker, 161 U. S. 591, 606, 16 Sup. Ct. 644, 40 L. Ed. 819, that a statute essentially similar, respecting the giving of testimony before the Interstate Commerce Commission and the resultant immunity provided for therein, operates to secure a general immunity, applicable whenever and in whatever court a prosecution may be attempted. In other words, the law of the United States being the supreme law of the land, any law of the United States operating as a grant of general immunity operates throughout the United States in both federal and state courts. So, then, we have this situation:

Because of some complaint filed with the Federal Trade Commission, or some criticism indulged in, or perhaps because of some general investigation being conducted by the commission, an investigation of the conduct of the business of these particular concerns was instituted. In response to a somewhat insistent request for information, and in obedience thereto, such information was furnished. At no time during the conduct of the investigation was any suggestion made or tendered that incriminating matter was being called for or given. Similarly, at no time during the proceedings was any suggestion made, tendered, or even entertained that immunity from criminal prosecution was to accrue as a result of the disclosures being indulged in. Under the conditions obtaining, to hold with the defendants is to hold that, with no preliminary assertion of privilege, suggestion of incrimination, or previous notice of any sort to the government at all, they are forever immunized from prosecution in any court of the United States, or of any state of the United States, with respect to any act committed or transaction had by them concerning which information was given to the Federal Trade Commission. That is the situation in its nakedness. In its nakedness it is so abhorrent to my sense of justice that I believe it merits unqualified condemnation.

Justice is our aim, and justice is based upon reason and fairness. In criminal justice there must be fairness to the government, as well as fairness to the individual. In order that no man might be convicted of crime out of his own mouth, by constitutional enactment, the absolute privilege was guaranteed to him of declining to testify at all

with respect to any matter which might tend to incriminate him, and therefore subject him to possible prosecution or punishment. It was long since made manifest, however, that it might be better in certain matters of public moment for the public to waive all right to impose criminal punishment on the individual, and in consideration of such express waiver compulsorily to demand and secure from him any and all evidence deemed relevant and material in respect to designated matters more or less vitally affecting the common good. Because of the obvious fairness of the situation thus presented, the people have provided, by law binding upon all the courts of the United States and the various states, that if the government, through any of its specified instrumentalities, does exact information from a man, does compulsorily require him to testify respecting matters that might incriminate him, he shall thereafter be free in every court of the country from prosecution or the possible exaction of a penalty or forfeiture.

But, in order that the statute may have a reasonable construction; in order that there may be a rational operation of the obligations resting no less upon the individual than upon the government; in order that society itself may receive some fair measure of protection; in order that the criminal law may not be rendered impossible of enforcement; and in order that opportunities and avenues of escape may not be opened up, so that sundry clever criminals in our midst may be permitted to go hence unwhipped of justice—I am persuaded that at some time during the course of the proceeding resulting in the compulsory furnishing of information, and in virtue of which a valid claim of immunity is thereafter to be urged, the question of possible incrimination should be broached, and, upon the notice thus given, organized government, representing the people, should be accorded the right of election as to whether the nature of the matter under investigation justifies the compulsory exacting of the testimony asserted to be incriminating and the consequent immunizing of the witness.

[2] Now, in dealing with this claimed immunity, though the argument took rather a wide range, it is not necessary to determine whether a subpœna should have issued, or whether the men ought actually to have been sworn, or whether they should actually have claimed their constitutional privilege, and positively or even tentatively refused to answer, because of their belief that their answers might serve to incriminate them. In a proper case, one or more of these circumstances might justify careful consideration. Here, however, as already indicated, there was no suggestion at any time by anybody of a possible claim of, or a reliance upon, expected immunity. Neither of the defendants entertained any idea, in my judgment, that they were to be the beneficiaries of any immunity in virtue of their giving information relative to the business they were conducting, and of course nobody representing the government had any suspicion that such would be claimed or a possible consequence.

From their own attitude and admissions, it is apparent they knew nothing about any possible immunity until they had employed astute counsel in the case now pending. I am persuaded, therefore, that it is a reasonable construction of the statute to hold that one who would

seek to take advantage of it must make it appear, or at least take such steps as to put the government upon notice, at such time as will enable the government to elect as to the course it desires to pursue, that there are matters with respect to which he is being or about to be interrogated, which may tend to incriminate him, and that, in consequence, if he testifies or yields information, it must be in consideration of immunity being accorded to him, pursuant to the terms of the law. Any other construction of the statute will make it possible for an individual who has been guilty of perhaps a heinous crime concerning, or in connection with, some business transaction that may touch upon commerce, to have initiated some sort of an investigation by the Federal Trade Commission, and then, upon an inquiry being made, to give some information touching the matter concerning the crime, and thereafter, as a legal consequence, be exempt from prosecution in any court of the land. See U. S. v. Bryant (D. C.) 245 Fed. 682. If such should be rendered possible, practical and positive law enforcement would be reduced to a very low ebb in this country.

In the absence of any showing or suggestion of the sort indicated, and consequent election or opportunity of election on the part of the government, it must be held that the information furnished by the defendants to the Federal Trade Commission was essentially voluntary in character and that no immunity results as a legal or other consequence.

Defendants have cited U. S. v. Armour & Co. (D. C.) 142 Fed. 808, 824, 825, and U. S. v. Bell (C. C.) 81 Fed. 837. The inappositeness of these decisions, in the light of the facts detailed herein, clearly appears. The government cites the decision of Judge Grubb, in U. S. v. Skinner (D. C.) 218 Fed. 870, with the logic and reasonableness of which I am in wholehearted accord, and also that of Judge Hunt, in U. S. v. Elton (D. C.) 222 Fed. 428, which is equally persuasive.

The pleas of immunity of the defendants named are overruled and disallowed.