RAMÓN SUÁREZ SÁNCHEZ, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, BALDOMERO FREYRE, JUDGE, Respondent.

No. C-64-38.      Decided June 10, 1965

492

*Santos P. Amadeo, Rubén Rivera Ramos,* and *Víctor Velasco Gordils* for petitioner. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for respondent.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

At 12:30 at night on February 23 to 24, 1963, in San José Housing Development in Hato Rey at a wedding dance, a fight started between Felipe Cabán Jiménez, José Juan Calderón, Ramón Suárez Sánchez, and Israel Ruiz Nieves. The latter died as a result of the wounds he received there.

On the following April 11, in the Superior Court, San Juan Part, Felipe Cabán Jiménez and José J. Calderón Velázquez, both of legal age, were jointly accused of murder in the first degree. Among the witnesses for the prosecution endorsing the information appeared the name of Ramón Suárez Sánchez, a minor.

On May 21, 1963, the prosecuting attorney filed two complaints in the Juvenile Section of the Superior Court, San Juan Part, against the minor Ramón Suárez Sánchez, for murder in the first degree, the first one, and for carrying prohibited weapons the second.

In the former it was alleged that ". . . the said minor Ramón Suárez Sánchez, on February 24, 1963, at 12:30

A.M. . . . illegally, willfully, and maliciously, acting in common agreement with the adults Felipe Cabán Jiménez and José Juan Calderón Velázquez, with malice aforethought, deliberation, with a firm and determined intent to kill, assaulted and battered Israel Ruiz Nieves, a human being, with a spring knife, with a metal blade of about four inches long inflicting on him several wounds, one in the left lumbar torso region and two in the abdomen, as a result of which wounds and blows he died at once."

The carrying of prohibited weapons charged was based on the carrying and bearing of the knife mentioned in the first information, it being alleged that he carried it for the purposes of offense and defense and not as an instrument of art, sport, profession, occupation, or trade.

On June 11 and August 6, 1963 hearings were held in the Juvenile Section to determine whether pursuant to § 4 of Act 97 of 1955 and Rule 13 of the Rules of Procedure for cases covered by this act, a change of venue could be ordered so as to prosecute the cases within an ordinary criminal procedure and as if it were the case of an adult. At that time the minor was accompanied by his parents "and represented by his counsel. . . ."

On August 22 the Juvenile Section entered an order waiving jurisdiction to take cognizance of the matters mentioned in the complaints and ordering a change of venue "to the proper Part of the Superior Court. . . ."[1]

---

[1] In part, that order states as follows:

"The grounds on which the Court based its above-mentioned conclusion are the following:

"1. Ramón Suárez Sánchez was born in Río Piedras on February 24, 1945. The facts charged in the complaints J. 63-479 and J. 63-480 occurred on February 24, 1963, that is to say, that the said Ramón Suárez Sánchez was 17 years eleven months old as of the date on which, it is alleged, he committed the offenses.

"2. That the offense charged in the complaint J. 63-480, Murder in the First Degree, constituted felony if committed by an adult.

"3. That the following information appears in the record of the

Felipe Cabán Jiménez was brought to trial on August 26 and 27, 1963 in the cases of murder and illegal carrying of weapons.[2]

During the first day of the trial by jury the petitioner, Ramón Suárez Sánchez, testified as witness for the prose-

respondent in this case:

"Psychological Evaluation: Intelligence Quotient: 62, limited intelligence. Falls in the category of slight mental deficiency. The results of the test do not reveal signs of organicity.

"He does not have much imagination and for that reason he cannot anticipate the consequence of his acts. He exhibits an internal rebellious attitude, and when in a state of tension or anxiety the natural tendency is to intensify the motor activity, whichever it might be. Aggressive disposition which he can manifest in determined circumstances. Psychologist P. A. Sifre Franco, M.A.

"Psychiatric Evaluation: He is in contact with reality and well oriented. There is no evidence of mental disorder in this youth. He is aware of the nature of the information. Psychiatrist, Arturo Flores Gallardo, M.D.

"The respondent has antecedents of other aggressions. In the environment where the minor has grown vice abounds, including drug traffic. While he worked with his father in the Río Piedras Market Place he met adult hoodlums. The home does not offer the necessary controls. His parents, after living together for 24 years, were separated four years ago. The mother is an alcoholic. The father joined another woman, and he does not give the proper attention to or controls the minor.

"In view of the foregoing, the Court in the use of its discretion hereby waives its jurisdiction to take cognizance of the matters concerning the complaint J. 63-480, for Murder in the First Degree, and orders a change of venue for the said case to be dealt within the corresponding Part of the Superior Court so that the District Attorney will immediately make the prescribed investigation and submit it to a magistrate to determine probable cause and fix bail.

"Jurisdiction to take cognizance of the cases alleged in the complaint J. 63-480 to prosecute Ramón Suárez Sánchez as an adult having been waived, therefore, a change of venue is ordered transferring the complaint for carrying weapons, case number J. 63-479, to the ordinary jurisdiction for the corresponding action."

[2] José Juan Calderón, the other accused, was granted a separate trial. He was brought to trial on December 4, 1963. On that day, at the request of the prosecuting attorney, the charge was reduced from murder in the first degree to voluntary manslaughter "because he could only establish that Calderón attacked the deceased with the fists and with a club." Then Calderón pleaded guilty and he was ordered to serve from 2 to 6 years in the penitentiary.

cution. In summary, his testimony upon being examined by the prosecuting attorney was as follows:

He knew Felipe Cabán Jiménez and the other accused José Juan Calderón Velázquez; on the night of the 24th of February 1963 he was at the wedding of a girl called Milagros, celebrated at San José Housing Development in Hato Rey; after the wedding there was a dance; that evening he met Israel Ruiz Nieves; the latter was dancing there and had a dispute with a certain Chuíto who alleged that Israel had taken his dancing partner away from him; José Juan Calderón and Felipe Cabán Jiménez were also there; it was said at the dance that a certain Quirín, Cabán's brother, had been wounded and then someone gave Cabán a long knife; Cabán "jabbed Israel Ruiz Nieves in the chest with the knife" at the moment the latter had fallen to the ground; Israel had clubbed Ramón Suárez Sánchez and then José Calderón "and a bunch went after him"; when Israel was going to jump over a fence he was caught; the one who had stabbed him in the chest was Felipe Cabán Jiménez; he, Ramón Suárez Sánchez, worked with his father in the Río Piedras Market Place.

Upon being examined by his counsel he testified, insofar as pertinent: About twelve persons had come down from the place of the dance; one called Quirín, Felipe Cabán's brother, had been wounded downstairs; he had never seen Israel, the victim, cut Quirín, who had two wounds in the back; he did not carry any knife or razor that night; he only uses a knife in Río Piedras Market Place, where he works, to cut the vegetable bags; he had heard that the victim had three wounds; after the events he went to the hospital because Israel had clubbed him in the head; when he came out of the hospital it was about five in the morning and at that time he went to the market place to work in his father's stand.

On August 27, 1963 the jury found Felipe Cabán Jiménez guilty of murder in the first degree. He was sentenced to life imprisonment. With respect to the violation of § 4 of the Weapons Act, the court acquitted him for insufficiency of evidence.

On November 7, 1963 the prosecuting attorney filed an information against the petitioner Ramón Suárez Sánchez for murder in the first degree committed, as stated in the information, in the following manner:

"The said accused, Ramón Suárez Sánchez, on February 24, 1963 and in Hato Rey, P.R., which is part of the Superior Court of Puerto Rico, San Juan Part, illegally, willfully, maliciously, and criminally, acting in common and mutual agreement with José J. Calderón Velázquez and Felipe Cabán Jiménez k/a Pipe, with malice aforethought, deliberation, and firm and determined intent and purpose to kill, showing that he had an abandoned and malignant heart, assaulted and battered treacherously and criminally with a knife which is a cutting weapon, Israel Ruiz Nieves, a human being, inflicting on him wounds of a serious nature which caused there and then his death."

Ramón Suárez Sánchez filed, through a lawyer, a motion to dismiss on the grounds that (1) since his arrest and until the date on which the information was filed more than 120 days had elapsed and (2) "immunity had been granted by the People of Puerto Rico against any prosecution for his participation in the events object of the above-mentioned information, pursuant to the provisions of the Immunity of Witnesses Act (Act 13 of 1941)." Subsequently he filed a motion to dismiss the cases—the prosecuting attorney had also filed against him an information for violation of the Weapons Law—"on the ground that he was not assisted by counsel, when without having expressly and intelligently waived the right not to incriminate himself and not being assisted by counsel, and without having been warned about said right, the accused testified as a witness for the people in the case *People of Puerto Rico* v. *Felipe Cabán Jiménez*

. . . for murder in the first degree and violation of the Weapons Act, in spite of the fact that petitioner was charged with the offense for which Felipe Cabán Jiménez was being prosecuted and the prosecuting attorney who accused and prosecuted said defendant had personal knowledge of this fact."

After both motions had been argued on April 30, 1964, the Superior Court dismissed them, on the ground "that § 239 of the Code of Criminal Procedure does not apply under the circumstances of this case."[3]

In this petition for certiorari to review that decision of the Superior Court, the petitioner assigns the following errors:

### "First Error

"Because the petitioner having been jointly accused with Felipe Cabán Jiménez and José J. Calderón Velázquez of Murder in the First Degree, and the petitioner having testified as witness for the People in the case against one of his codefendants, and the petitioner not having expressly and intelligently waived the right not to incriminate himself, as he did, in testifying against Felipe Cabán Jiménez, and without the petitioner having been assisted by counsel and without having expressly and intelligently waived his right thereto, inasmuch as the judge, when the petitioner testified, did not advise him of the right not to incriminate himself nor of the right to be assisted by counsel, it is a violation of due process of law (Amendments V, VI, and XIV of the Federal Constitution) to bring the petitioner to trial.

### "Second Error

"Because the petitioner was deprived of the right not to incriminate himself and of the right to legal aid inasmuch as the trial judge did not advise him of the right not to testify as a witness and of the right to have legal aid before testifying,

---

[3] The respondent court, without any doubt, intended to refer to Rule 247(c) of Criminal Procedure in force at the time the information was filed, which substituted §§ 239, 240, and 241 of the prior Code of Criminal Procedure.

thereby violating Amendments V, VI, and XIV of the Constitution of the United States.

### "Third Error

"Because if immunity is not granted to petitioner pursuant to the provisions of Act No. 3 of March 18, 1954, said Act would be void and unconstitutional (Amendments V, VI, and XIV of the Federal Constitution) inasmuch as the People obtained petitioner's testimony in order to seek the conviction of a codefendant and the judge did not advise him of the right not to incriminate himself and to be assisted by counsel, the petitioner testified as witness for the People incriminating himself, and now the immunity to which he was entitled to have refused to testify and be assisted by counsel is denied.

### "Fourth Error

"Because the petitioner having been excluded from the prosecution filed against him and his codefendants, to testify as a witness for the prosecution, said discharge is tantamount to an acquittal pursuant to the provisions of § 241 of the Code of Criminal Procedure."

The first three assignments actually raise only one issue, namely: whether the petitioner, under the attendant circumstances, was deprived of the right not to incriminate himself and also of the right of legal aid, not having been advised by the trial judge when he was ready to testify at the trial against Felipe Cabán Jiménez that he had the right to refuse to testify as witness and to have legal aid before testifying.

■ A motion to dismiss the information or the complaint, or any count thereof, pursuant to Rule 64 of Criminal Procedure, "shall be based only on one or more" of the several grounds enumerated in Rule 64 itself. The state of facts upon which those three assignments rest is not comprised among such grounds.

■ The criminal action filed against the petitioner is yet on the stage of pleadings. As yet, on the merits, there

does not exist in the record any plea of guilty or not guilty under Rule 68. Thus, at this stage, it is difficult to affirm whether The People will use at the trial, as evidence adverse to petitioner, the testimony he gave on August 26, 1963 in the case against Felipe Cabán Jiménez.

■ We consider well taken the following argument concerning the first two errors advanced by the Assistant Solicitor General, Rodríguez Rivera in his brief:

"The contentions raised in these two assignments of errors do not constitute a valid demurrer against the order appealed from. It is actually a question of petitioner's anticipation as to the vulnerability to which, he believes, the evidence to be presented by the prosecuting attorney at the hearing on the merits of the cases is to be subjected. As correctly held by this Honorable Court in *Batalla* v. *District Court*, 74 P.R.R. 266 (1953), the immunity clause offers protection against a successful accusation, *available to defendant as a defense, and not immunity against the accusation itself*. We believe that even in the situation more favorable to petitioner, the latter must be tried for the offenses charged, and only then, as part of his defense in the prosecution, could he invoke the alleged immunity, which is granted to the same extent as the Constitution establishes the privilege, inasmuch as in no way could it constitute immunity against the informations themselves. The existence of a privilege for a defendant is always elucidated within the proceeding to which an information is submitted since no person can secure immunity concerning any lawful accusation which the State might institute against him. *State* v. *Nowell*, 58 NH 314. Nothing could deprive the state from prosecuting petitioner on the basis of competent proof aside from any right or privilege to which the latter might be entitled on the grounds of the incidents and circumstances derived from the prosecution to which the presumptive codefendants in the facts which gave rise to the information against petitioner were submitted.

"It being merely a question of the commencement of a criminal action by way of certain information against petitioner, and not of the admission of incompetent evidence as evidence against him, we do not see how the case law cited in petitioner's brief might be applicable. We do not pretend, however, to pro-

nounce judgment as to the correctness of the contentions raised by him. We believe that they should be dealt with within the ordinary trial to which he should be brought. The petitioner alleges a series of occurrences concerning several statements given by him to the prosecuting attorney in the investigation of the facts, and later, in the prosecution against Felipe Cabán Jiménez. The veracity of all of these facts goes as an attack to the competence of the evidence presumably in the hands of the prosecuting attorney to prosecute petitioner. The prematureness of the argument stands out then, inasmuch as there has been no intention so far, to present said evidence against the petitioner."

■ The petitioner maintains that if the Immunity Act of 1954 is not construed in the sense that if it does not grant automatic immunity, that is to say, without the witness claiming it, said statute would be unconstitutional. We stated in *Commonwealth* v. *Aguayo*, 80 P.R.R. 534, 576 (1958) that the courts will not anticipate a question of constitutional law before it becomes necessary to decide it.[4]

In his fourth assignment he alleges that having been excluded from the prosecution so as to act as witness for the

---

[4] If we were compelled to determine the constitutional validity of that act on the ground of the argument advanced by petitioner, we could reach no other conclusion but that *the statute does not grant automatic immunity*. It was precisely that factor, one of the defects assigned to the Act of 1941 which gave rise to the repeal of that statute and the enactment of the 1954 Act. Journal of Proceedings 741 and 753 (1954). Beyond any doubt the legislative intention upon enacting said statute was to repeal, by legislative fiat, the interpretation given by this Court to the Act of 1941 in *Batalla* v. *District Court, supra,* where it was said that the aforementioned act operated automatically. We are not compelled, as we have already stated, to determine whether or not the interpretation in the sense that it does not operate automatically is constitutionally valid. See, however, 27 *Revista Jurídica de la U.P.R.* 419; *United States* v. *Kimball,* 117 Fed. 156 (1902); *Burnell* v. *Montana,* 194 U.S. 572 (1904); *United States* v. *Lee,* 290 Fed. 517 (1958); *United States* v. *Monia,* 317 U.S. 424, see also, 18 U.S.C. § 3486, declared constitutionally valid in *Ullmann* v. *United States,* 350 U.S. 422 (1956); 55 Colum. L. Rev. 636, where it is recommended that the claim for immunity be requested and that the order granting or denying it be in writing just as it is established by the local act.

State, it was tantamount to an acquittal pursuant to the provisions of § 241 of the extinct Code of Criminal Procedure.

■ At the time he testified incriminating Felipe Cabán Jiménez—but without incriminating himself in any way—that § 241 had been repealed. Nevertheless, when the new Rules of Criminal Procedure became effective on July 30, 1963, its text as well as that of §§ 239 and 240 of the same body of law were adopted by subdivisions (c) and. (d) of Rule No. 247, which read as follows:

"(c) Discharge of defendant to act as witness. When two or more persons are included in the same charge, the court may, at any time after the beginning of the trial but before the defendants have gone into their defense, direct any defendant to be discharged, that he may be a witness for The People of Puerto Rico. When two or more persons are included in the same information, and the court is of opinion that in regard to a particular defendant there is not sufficient evidence to charge him with the offense, it must order him to be discharged before the evidence is closed, that he may be a witness for his codefendant.

"(d) Effects. The dismissal provided for in this Rule shall be a bar to another prosecution for the same facts."

It was established as a general rule by the California case law, since the beginning, that in order that §§ 239, 240, and 241 be applicable it was necessary: that the defendants be included in the same indictment; that they be jointly tried in a single trial; and that the District Attorney make an application to the Court, sanctioned by the latter, stating the desire of the prosecutor to discharge one of the defendants from the indictment that he may be used as witness for the people, without the possibility of incriminating himself. Such a request should be filed, before the defendant goes into his defense. *People* v. *Bruzzo*, 24 Cal. 41 (1864); *People* v. *Alsina*, 22 P.R.R. 426 (1915).

Said sections are inapposite when the codefendant consciously and voluntarily takes the stand; *People* v. *Snyder*,

74 Cal. App. 138; 239 Pac. 705; or when he is indicted or prosecuted on a separate trial. *Ex Parte Stice*, 70 Cal. 51, 11 Pac. 459.

The proceedings carried out do not place the petitioner within the aforementioned rules. In the first place he was not included in the information nor prosecuted in the same trial where he was used as witness for the people. The court never discharged him as codefendant from the prosecution, nor was it possible. In fact, prior to his testimony, there was no information against him pending before the ordinary criminal jurisdiction. It was not until three months later that the information was therein filed against him. During all the time that elapsed, he had only been subject to a special proceeding, of a noncriminal nature, in the Juvenile Section of the Superior Court.

Although we will uphold the validity of the order appealed from which denied the dismissal of the information, we wish to state finally the following: Petitioner is correct in stating that when Ramón Suárez Sánchez was called to testify against Felipe Cabán Jiménez on August 26, 1963, the trial court and the prosecuting attorney were completely aware, through the record of the cases, that said witness for the people was being charged, in two complaints filed in the Juvenile Section, with the commission, in common and mutual agreement with Felipe Cabán Jiménez and José J. Calderón Velázquez, of the same facts charged against the latter before the ordinary criminal jurisdiction; that a hearing had been held in the Juvenile Section for the purposes of waiving jurisdiction over the complaints and ordering a change of venue to the ordinary criminal jurisdiction so as to prosecute Ramón Suárez Sánchez as an adult; and that, four days prior to the trial, the Juvenile Section had waived its jurisdiction for those purposes, Ramón Suárez Sánchez being exposed to a prosecution for the same facts as in the cases against Cabán and Calderón. They also knew that his name

endorsed the information as one of the witnesses for the people, in spite of having the prosecuting attorney alleged in the complaints before the Juvenile Section that he had coparticipated in the commission of the same facts.

However, the prosecuting attorney did not include Suárez Sánchez in those informations as coauthor of the offenses and jointly with Cabán and Jiménez. He believed that he was, at the time the facts were committed, under eighteen years of age, that is to say, a child in the light of the definition given to that word in § 1 (c) of the cited Act No. 97 of 1955, whose conduct must be passed upon in the Juvenile Section. The prosecuting attorney did not seek to check well the correct age of Suárez Sánchez at the moment that the facts which caused the violent death of Israel Ruiz Nieves occurred, that is at 12:30 A.M. on the night of February 23 to 24, 1963. And that was where the error was committed by him, and by the Juvenile Section, and by the lawyer who assisted the presumptive "child" in all the proceeding before the Juvenile Section, because the youth Ramón Suárez Sánchez at twelve o'clock that night had reached the age of 18 years, he was an adult for the purposes of the aforesaid statute and he was liable, thirty minutes after that midnight, to be prosecuted before the ordinary criminal jurisdiction of the competent court.[5]

---

[5] He was born in Río Piedras on February 24, 1945. The most rational and reliable criterion for determining or computing the age is the so-called "Savigny Rule" which consists in including the day of birth as a whole day, irrespective of the hour, and counting up to twelve midnight of the day preceding the anniversary of the person's birth. Our Civil Code has no rules for the computation of age. See its § 8. We have decided that the natural day consists of 24 hours beginning at twelve midnight. *People* v. *Terrasa*, 28 P.R.R. 10, 12 (1920). In the calculation of the days, that Code rejects the computation of day fractions. In its § 1860 it provides that in the computation of time necessary for prescription the day on which the time begins to run is considered as a whole day.

The Civil Code of Spain in the 1943 amendment to its § 320 accepts this criterion, as well as the German and the Argentine. On this point

■ The exclusion of Ramón Suárez Sánchez from the information charged only against Cabán and Calderón and the improper filing of the complaints before the Juvenile Section, we repeat, were due to the erroneous computation then made. But this does not constitute the final discharge from a criminal prosecution contemplated by the old §§ 239, 240, and 241 of the Code of Criminal Procedure, whose texts continue in force in Rule 247. So much so, that his case was transferred to the ordinary jurisdiction to be prosecuted as an adult, although, as we have already indicated, for that purpose the transfer was unnecessary.

■ It is also true that when the minor began to testify he was not advised as to his right not to incriminate himself

the professor of Murcia, Batlle Vázquez, in his *Estudio Sobre la Regla de Determinación o Cómputo de la Edad en la Legislación Civil*, published in the *Revista de Derecho Privado*, Vol. 20, p. 86 (1933), comments:

"On the other hand, the criterion of the school of SAVIGNY, followed, as we have said, by the Civil Code of Germany—§ 187, 2nd paragraph—considers the day in which the birth took place as a whole day, and therefore, age is deemed to have been attained at the commencement of the anniversary day. This position is also accepted in the Argentine Statutes, inasmuch as, according to SALVAT, § 128 of the Civil Code of this nation states that the lack of legal capacity of minors ceases the day they attain the age of twenty-two years, and accordingly, the acts performed on that day would be perfectly valid from the point of view of age.

"Without hesitating we agree in a general way with this last system, because it is in conformity with the consideration of the initial day for prescription which is properly set on the birthday, because the rules concerning capacity should be construed in an ample sense and favorable to the *facultas agendi*, and because there exists the practical advantage that the Roman criterion being the one which must be considered in force in the territories of Cataluña and Navarra, uniformity is attained in this point.

"The theory we expound has also the advantage to comply as a whole with the vulgar concept of age and with the established social customs. Relatives and friends hasten to congratulate each other on their birthdays, whenever they have the opportunity, without awaiting for a special or determined hour or moments to do so. It is one more reason in behalf of the adoption of the Savigny Rule."

See *Ross* v. *Morrow*, 85 Texas Reports 172 and 175; *State* v. *Joyce*, 123 La. 637, 49 Southern 221.

and to be assisted by counsel, under the attendant circumstances concerning him.

The summary of his testimony on the witness stand which we gave at the beginning of this opinion shows, in our judgment, that such testimony does not tend to incriminate him. However, his lawyer contends the contrary in this petition. For that reason we shall provide in the judgment to be rendered herein, that the testimony given by petitioner at the trial held on August 26, 1963, in cases nos. G-63-420 and M63-787, against Felipe Cabán Jiménez, of the Superior Court, San Juan Part, be in no way used by the People of Puerto Rico as evidence against him, nor any reference made thereto during the trial or trials to be held against him by virtue of the informations charged separately by the prosecuting attorney on November 7, 1963, under numbers G-63-1971 and M63-2196.[6]

The order appealed from will be affirmed.

---

[6] For the reason that petitioner, Ramón Suárez Sánchez, was an adult, as we have concluded, today we are rendering judgment reversing the conviction of Felipe Cabán Jiménez, since the judge did not decide, nor instruct the jury, that the testimony given by Suárez Sánchez against Cabán needed to be corroborated.